The appellant was indicted and convicted for the robbery of one hundred and ninety-nine dollars from the person of Otis Carroll, owner and operator of Neal's Fried Chicken in Enterprise, Alabama. In accordance with the verdict and punishment fixed by the jury, the trial court entered judgment and sentenced the appellant to seventeen years in the penitentiary. At trial, the appellant was represented by two court appointed attorneys. These same counsel have been appointed to represent the appellant on this appeal.
With one additional ground, the appellant cites as error the same identical grounds raised in his motion for new trial. However from his argument in brief, it appears that the heart of all alleged error is the unlawful arrest and subsequent search of the appellant. *Page 480 
Otis O'Neal Carroll, owner and operator of Neal's Fried Chicken in Enterprise, Alabama, testified that he was robbed by a black male at gunpoint between 8:15 and 8:30 P.M. on March 12, 1976, as he was preparing to leave his place of business. The police were notified and Carroll described the robber to them. That night, the police presented some suspects to Carroll for possible identification but none was made. The next night, about 10:00 or 10:30, Carroll went to the police station and picked out a photograph of the accused in a mug book. This identification, and the in-court identification by Carroll, was positive and unequivocal.
On March 13, 1976, the day following the robbery, Dozier Johnson came to the police station about 6:30 P.M. and told Officer Eddie Diggs that he had information that the appellant robbed Neal's Fried Chicken and was going to rob White's Grocery that night. Johnson, who had known the appellant for three weeks, told Officer Diggs that the appellant had not worked since he had been in Enterprise, had made the statement that he didn't have anything, and never did give anything to the church but had been seen spending a lot of money. Johnson also told Officer Diggs that the appellant had spent some of the money at Ford's Beauty Parlor getting his hair fixed. Other than this Officer Diggs did not know on what Johnson based his information or where he got it. Prior to this time Officer Diggs had never personally used any information given by Johnson in making an arrest.
On cross examination as a witness for the state, Officer Diggs did testify that he had relied on Johnson's information several times before. However when called as a defense witness, Diggs testified that he could recall no specific occasion when he had obtained information from Johnson, that Johnson told him of an incident, that information from Johnson had been used in making an arrest but that Officer Diggs did not make the arrest, and that Johnson never gave him any information before this time.
Around 9:30 on the night following the robbery, Officer Diggs went to the residence of Jim White. He identified himself to the appellant and told him that he needed to talk to him downtown and would explain what he wanted to talk about when they got downtown.
The appellant did not resist but went back into his room and got his billfold. Outside the house the appellant allowed Officer Diggs to pat him down for a weapon. Officer Diggs did not tell the appellant he was under arrest at this time.
Lt. Rainey and Lt. Cooper met Officer Diggs and the appellant before they reached the police station and learned that the appellant had not been placed under arrest. They told Officer Diggs to go ahead and arrest him. They said that they had other information. Officer Diggs stated that this information was:
 "Similar to what I had already got, but said they had gotten other information that the young man was intending to rob White's Grocery and that they had been to White's Grocery and a relative of his was there at the time and told Mr. White that this gentleman was going to rob him."
Office Diggs then arrested the appellant and took him to the police station. Before taking the appellant back to the jail, Officer Diggs counted the money the appellant had on him. Diggs counted $177.00.
Lt. Rainey testified that he searched the appellant after his arrest and found $177.00 in the appellant's wallet.
Prior to trial, the appellant filed a motion to suppress evidence based on the illegal arrest and subsequent search of the appellant. This motion was renewed immediately prior to trial and throughout the course of the trial. When the state rested its case, the appellant moved to exclude the evidence and made a motion to dismiss for lack of probable cause.
All the evidence for the defense went to showing the alleged illegality of the arrest and the failure of the state to prove the reliability of the informer. The testimony *Page 481 
of Officer Diggs has already been summarized.
Dozier Johnson, the informant, testified, as Officer Diggs admitted, that he had never given Diggs any information that would lead him to make an arrest in a case other than the one in question. In substance, Johnson testified that several people up and down the street had said that the appellant robbed Neal's Fried Chicken. Marie Bell told him that she had given the appellant a permanent hair do and the appellant had paid for it with a twenty dollar bill. Ms. Bell told Johnson that she was afraid that the appellant would come back and rob her also. Ms. Bell said that customers had told her that the appellant had robbed Neal's Fried Chicken.
 I
By authority of Title 15, § 154, Code of Alabama 1940, a law enforcement officer may arrest any person for a felony, although not committed in his presence, if he has reasonable or probable cause to believe that the person arrested committed the offense. Seals v. State, 282 Ala. 586, 213 So.2d 645
(1968); Reed v. State, 48 Ala. App. 120, 262 So.2d 321 (1972). Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Yaeger v. State, 281 Ala. 651, 207 So.2d 125
(1967); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329,3 L.Ed.2d 327 (1959); Wong Sun v. United States, 371 U.S. 471,83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Mere suspicion or good faith on the part of the arresting officer is not sufficient to constitute probable cause for an arrest, Mallory v. UnitedStates, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); common rumor or report, suspicion, or even "strong reason to suspect" is not adequate, Henry v. United States, 361 U.S. 98,80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Beck v. Ohio, 379 U.S. 89,85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Sellers v. State,48 Ala. App. 178, 263 So.2d 156 (1972); Duncan v. State, 278 Ala. 145, 176 So.2d 840 (1965); Shipman v. State, 51 Ala. App. 80,282 So.2d 696 (1973); more than a good faith suspicion is required. Fennell v. State, 51 Ala. App. 23, 282 So.2d 373, cert. denied, 291 Ala. 778, 282 So.2d 379 (1973).
One does not have probable cause unless he has information which, if submitted to a magistrate, would require the issuance of an arrest warrant. Thomas v. State, 50 Ala. App. 227,278 So.2d 280 (1973); Giordenello v. United States, 357 U.S. 480,78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Whiteley v. Warden ofWyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031,28 L.Ed.2d 306 (1971); Wong Sun, supra; Beck, supra. Thus if probable cause is to be based solely upon the informant's information, two requirements are necessary: (1) The underlying circumstances must show the officer's reason to believe that the informant is a credible person or that the information is reliable, and (2) the circumstances must show the basis of the conclusions reached by the informer, or, in other words, how the informer acquired his knowledge. Thomas, supra; Payton v.State, 47 Ala. App. 347, 254 So.2d 351 (1971); Aguilar v. Texas,378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); 3 Alabama Digest, Arrest § 63.4 (7)(8); 6A C.J.S. Arrest § 29, p. 69.
If the underlying circumstances concerning the informer's credibility, the source of his information, or even both are not disclosed or are found inadequate under Aguilar, the informer's tip may nonetheless be considered in determining the existence of probable cause if the tip is corroborated by the officer's own knowledge or observation. Spinelli v. UnitedStates, 393 U.S. 410, 98 S.Ct. 584, 21 L.Ed.2d 637 (1969); Cookv. State, 56 Ala. App. 250, 320 So.2d 764 (1975). Thus where the initial impetus for the arrest is on informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause; however the additional information acquired at the time of the arrest must be corroborative of the informer's tip. Payton, supra; Shaneyfeltv. State, 48 Ala. App. 26, *Page 482 261 So.2d 445, cert. denied, 288 Ala. 750, 261 So.2d 447
(1972).
Additionally,
 "Knowledge of another police officer maybe imputed to the arresting officer, who need not have probable cause on the basis of his own personal knowledge, since knowledge of each officer working in coordination with others to solve a crime is knowledge of all for the purpose of establishing probable cause." 6A C.J.S. Arrest § 32, p. 77.
Yet, under such circumstances, the officer initiating the chain of communication directing the arrest must have probable cause upon which to make an arrest. Cook v. State, 56 Ala. App. 250,220 So.2d 764 (1975); Spurlin v. State, 46 Ala. App. 485,243 So.2d 758, writ denied, 286 Ala. 738, 243 So.2d 763 (1909).
Looking to the facts in this particular case we find that the information available to Officer Diggs at the time of the arrest was:
 1. The report of Dozier Johnson that the appellant had committed the robbery of Neal's Fried Chicken.
 2. The fact that Lt. Rainey and Lt. Cooper had obtained information similar to that which Johnson had given Officer Diggs.
 3. And "other information that the appellant was intending to rob White's Grocery".
After having carefully examined the entire testimony of Officer Diggs, we find that Johnson told him that he had information that the appellant had robbed Neal's Fried Chicken and that he had intended to rob another business; that the appellant had not worked since he had been living in Enterprise and that he had been spending a lot of money; and that the appellant spent money getting his hair fixed at Mrs. Ford's beauty parlor. Officer Diggs testified on several occasions that he never learned where Johnson got his information. Thus, the state failed to show how the informer acquired his knowledge: one of the two elements necessary to establish the existence of probable cause where an arrest without a warrant is made on the basis of an informer's tip.
The second prong of the test, the credibility of the informer, is in issue. While Officer Diggs testified that he had relied on Johnson's information before, he also stated that Johnson never gave him any information before this one time. At best the evidence given by Officer Diggs on this issue is conflicting. Under these circumstances, it cannot be said that the state met its burden of showing that the arrest was lawful.Knox v. State, 42 Ala. App. 578, 172 So.2d 787 (1964); Duncan v.State, 278 Ala. 145, 176 So.2d 840 (1965); White v. State,45 Ala. App. 1, 221 So.2d 117 (1969).
Additionally the testimony of the informer, Dozier Johnson, was to the effect that he never gave Officer Diggs any information on a prior occasion that led him to make an arrest.
When asked where he got the information that the appellant robbed Neal's Fried Chicken, Johnson stated that:
 "There were several of them talking. Several of them talking. So I happened to hear it. So I went by Marie Bell's and she stopped me. And, this is what she told me. She said, `Do you know that young man'. I said, `No, I do not know him'. She said, `He is your wife's kin people'. I said, `I don't know him'. I said, `I have seen him'. This is what she told me. She said, `I give him a permanent hair do'. She said, `He paid me off in a twenty dollar bill'. This is the way she said it. She said, `I am scared of that man'."
* * * * * *
 "and said she had heard about he had robbed this chicken place out there."
She heard this from
"People coming in there to get their hair do."
* * * * * *
 ". . . They's several people's up and down that street said he robbed that place that night." *Page 483 
The record therefore positively and affirmatively discloses that the state utterly failed in its burden of proving a lawful arrest. Testimony from the witnesses for the state and the defense reveal that the arresting officer (1) had no reason to believe that the informer was reliable and (2) had no knowledge of how the informer obtained his information — whether it was by direct observation, fair conclusion drawn from circumstantial evidence, or information given by another who was reliable and in a position to know.
Despite this, Johnson's information may still have been used to establish the existence of probable cause if corroborated by additional information. The only source of such corroboration in this case was whatever information Officer Diggs obtained from Lt. Rainey and Lt. Cooper. Regardless of what that information was, the record is silent as to where or from whom it was obtained. Certainly, from the record, it cannot be said that those two officers had probable cause to arrest the appellant on any charge. The information that the appellant had intended to rob White's Grocery bore no legal or logical relationship or connection to the robbery of Neal's Fried Chicken. Had there been proper objection, this evidence should have been excluded.
The arrest, in this case, was based on pure rumor, on gossip, and suspicion. There is not one thread of evidence which would allow us to even assume that the arresting officer had a description of the robber. Although he very well could have, it would be mere speculation on our part to find that he did. The victim did not identify the appellant and single out his picture in a photographic display (mug books) until approximately thirty minutes to an hour after the appellant had been arrested.
We do not question the good faith of the arresting officer. Indeed, we commend him for his candor and honesty on the witness stand. However, the subjective good faith of the arresting officer, even though it subsequently appears that the person arrested is guilty of an offense, will not establish probable cause where the elements discussed above are lacking.Beck, supra.
The responsibility for setting aside any conviction is a heavy responsibility to bear. It is one that must be approached with caution and due proportion. While perfect procedure is not required, proper regard must be given to basic fundamental rights. Arrest on mere suspicion or rumor collides violently with the basic human right of liberty. Henry, supra, at 80 S.Ct. 170-171. Under the facts of this case and the laws of the land, this court is constrained and required to reverse.
For the reasons stated above this case is due to be and is hereby
REVERSED AND REMANDED.
All Judges concur.