285 So.2d 512

**Gregory L. SMITH**

v.

**STATE.**

I Div. 289.

Court of Criminal Appeals of Alabama.

Aug. 14, 1973.
Rehearing Denied Sept. 25, 1973.

Lee B. Williams, Grove Hill, for appellant.

William J. Baxley, Atty. Gen., and William G. McKnight, Asst. Atty. Gen., for the State.

W. J. HARALSON, Supernumerary Circuit Judge.

The appellant was charged with murder in the first degree, convicted of murder in the second degree, and sentenced to thirty years imprisonment. From this judgment he appeals.

On the night of April 24, 1971, at approximately 10:00 p. m., Mr. B. O. Cawthorn was sitting in the house or camp of Mrs. Lucille Clark in Washington County when he was shot in the head with buckshot from a shotgun which had been fired from outside a window. Several hours later when Mrs. Clark overcame her fear of leaving the cabin, she reported the incident. The deceased had been living with Mrs. Clark for several months before the shooting and was employed on the night shift· at a nearby industrial plant. After being notified of the occurrence, the sheriff, the chief deputy sheriff, and the assist-

ant district attorney went to Mrs. Clark's home on the morning of April 25, and conducted an investigation. In the room where deceased's body was lying, there was a small hole in the screen of one window. Broken glass from the window and a buckshot pellet apparently from a .16 gauge shotgun, were found on the floor. Blood was found on the couch opposite the window. Outside the house, they found several .16 gauge shells which had been fired, and some cigarette papers. The telephone wire leading from the house had been cut, and a part of it was leaning down against the house.

Soon thereafter, the chief deputy sheriff, Mr. William Wheat, went before the circuit clerk of Washington County and procured a search warrant for the home of the appellant, allegedly based upon information given him by Mrs. Clark. Under authority of the search warrant, the appellant's home was searched, and the officer found cigarette papers and two .16 gauge shells containing buckshot. It appears that appellant was not in the house at the time, but one Marvin Morris, who lived with the appellant, was present during the search and advised the officer that appellant had gone out. Upon hearing some sort of noise outside in the rear, the officer proceeded through the back of the house to the back yard. He passed through a gate and found appellant lying down in the edge of some woods or bushes some 75 feet away. Appellant was intoxicated and had with him a .16 gauge single barrel shotgun that was plainly visible. A search of his clothing revealed some cigarette papers and a knife, all of which articles the officer took from him.

Marvin Morris testified for the State that in the early part of the night of April 24, he drove appellant to within 75 yards of Mrs. Clark's home, where appellant left the car carrying a single barrel .16 gauge shotgun. A few minutes later he heard a shot. Appellant returned shortly, got in the car, and they drove back to appellant's home. Both of them had been drinking.

Appellant later made a statement to Morris that "he might as well go ahead and blow his brains out because he had shot a man." Morris later advised the officers of the above matters, but after the search warrant had been sworn out to search appellant's premises.

The appellant was taken into custody and held for murder of the deceased.

The body was examined by a toxicologist, Dr. Nelson Grubbs, who testified that death was caused by a head wound in which be found pieces of glass and one or more buckshot pellets from a .16 gauge shotgun.

At the trial a motion to quash the search warrant procured by officer Wheat was heard outside the presence of the jury, and overruled. Later in the trial, appellant again objected to the admission of the search warrant and again was overruled. A motion to exclude was also overruled.

■ An examination of the search warrant and affidavit on which it was based, which was made an exhibit to the State's testimony, shows that the affidavit was taken by W. E. Miller, Circuit Clerk of Washington County, Alabama. Thus is posed the question as to whether or not a circuit clerk has the authority to take an affidavit and issue a search warrant based thereon when acting as circuit clerk only.

This court takes judicial knowledge that an Inferior Court of Washington County was created by Act No. 71, 1967, Vol. 1, page 404 and that § 5 of that act reads in part as follows:

"The clerk of the circuit court of Washington County shall be ex officio clerk of the inferior court . . . The clerk shall have and exercise the same powers and authority and perform the same duties in respect to the business of this court as county court clerks and circuit court clerks as provided by general laws. The clerk of the inferior court may take affidavits and complaints in misdemeanor and felony cases, may issue

warrants of arrest in such cases, and may issue search warrants. Such complaints, and such warrants issued by the clerk, shall have the same legal force and effect as though the same had been taken or issued by the judge of the court . . . ."

As we read and understand this act, it confers upon the person acting as the clerk of the circuit court of Washington County when acting in the capacity of ex officio clerk of the county court, the right to issue search warrants. However, we see nothing in this act which confers upon the clerk of the circuit court, when acting in that capacity only, the right to take affidavits and issue search warrants thereupon. It appears to us that this act does not merge the office circuit clerk and clerk ex officio of the Inferior Court into one office. It merely appoints the circuit clerk as ex officio clerk of the Inferior Court and specifies his duties and powers as ex officio clerk of that court when performing the duties necessarily arising from the business of the Inferior Court.

We know of no authority of law, statutory or otherwise, which confers upon the clerk of the circuit court the right to take affidavits and issue search warrants.

Title 15, § 100, Code of Alabama 1940, defines a search warrant as an order in writing in the name of the State signed by a magistrate, etc. Title 15, § 399, Code of Alabama 1940, defines who are magistrates. Title 29, § 211, Code of Alabama 1940, under that part of the Code dealing with the prohibition law, sets out those who are authorized to issue search warrants in cases dealing with prohibited liquors. Nowhere in any of these statutes is any power conferred upon a circuit clerk to discharge these duties. On the other hand, invariably the statutes require affidavits to be taken before search warrants may be issued by magistrates except in Title 29, supra, which provides that in counties of certain population any clerk of any inferior court has that power.

In the issuance of a search warrant, a judicial determination (as distinguished from executive) of probable cause is necessary, hence as a general rule these duties have been allocated to persons holding judicial office. Brown v. State, 42 Ala.App. 429, 167 So.2d 281; Knox v. State, 42 Ala.App. 578, 172 So.2d 787; Sopcjak v. State, 42 Ala.App. 608, 173 So. 2d 403.

This is not to say that the legislature does not have the powers to confer upon certain officials the right heretofore discussed which usually rests with those holding some sort of judicial office.

Insofar as we can determine, the above question has not been passed upon by the appellate courts of Alabama. We are aware of Womack v. State, 281 Ala. 499, 205 So.2d 579, in which the Supreme Court of Alabama, speaking through Mr. Justice Coleman, declined to decide whether a circuit clerk had this authority.

We have reached the conclusion that a circuit clerk, acting as such, has no authority to take affidavits and to issue search warrants based thereon. The search warrant in the case at bar was invalid and gave the officer no right to search appellant's premises.

It follows that the court committed reversible error in overruling the motion to suppress the search warrant and the motion to exclude.

This being so, the introduction of the evidence found in the search of the appellant's home was also error fatal to the State's case.

In view of the almost certain likelihood of another trial, we wish to point out that it appears when appellant was found lying in the edge of the woods with the shotgun in plain view, he was not within the curtilage of his home. He would not, therefore, be entitled to the protection afforded under the Fourth Amendment of the Constitution of the United States.

Under the testimony, we see no error in the introduction of the shotgun.

 At the time appellant was found, taken into custody, and searched, the officer had probable cause to make the arrest based upon the information furnished by Mrs. Clark.

In view of another trial, it is not necessary to decide some of the other matters raised in the brief.

For the errors pointed out, the case is reversed.

The foregoing opinion was prepared by Honorable W. J. HARALSON, Supernumerary Circuit Judge, serving as a Judge of this Court under Section 2 Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Reversed and remanded.

CATES, P. J., and TYSON and HARRIS, JJ., concur.

ALMON and DeCARLO, JJ., dissent.